1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                    **EASTERN DISTRICT OF CALIFORNIA**

8

9   **JENNIFER PROSTEK, individually and**          **CASE NO. 1:22-CV-1530 AWI BAM**
    **on behalf of others similarly situated and**
10  **aggrieved,**
                                                     **ORDER ON DEFENDANTS' MOTION**
11              **Plaintiff**                        **TO COMPEL ARBITRATION**

12          **v.**
                                                     (Doc. No. 4)
13  **LINCARE INC., LINCARE PHARMACY**
    **SERVICES, INC., and DOES 1-50,**
14  **inclusive,**

15              **Defendants**

16

17

18          This is a putative class action lawsuit brought by Plaintiff Jennifer Prostek against her

19  former employers, Defendants Lincare, Inc. ("LI") and Lincare Pharmacy Services, Inc.

20  (collectively "Defendants").  Defendants removed this case from the Tulare County Superior

21  Court.  Prostek alleges various violations of the California Labor Code (e.g. failure to pay

22  overtime, failure to provide required meal periods, failure to pay minimum wages, etc.),

23  California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200), and California's

24  Private Attorney General Act ("PAGA") (Cal. Lab. Code § 2699).  Currently before the Court is

25  Defendants' motion to compel arbitration.  For the reasons that follow, Defendants' motion will be

26  granted, all but one cause of action will be sent to arbitration, and the remainder of this case will

27  be stayed.

28

1  **FACTUAL BACKGROUND**

2      From the Complaint and the declarations of the parties, Defendants co-employed Prostek.

3  Prostek began working for Defendants in May 2021 as a customer service representative.  On her

4  first day of employment, Defendants' office manager Arlene Eaton gave Prostek a stack of

5  paperwork to sign.  The stack consisted of numerous documents which Prostek believed she had to

6  sign in order to start working.  The stack included training forms on equipment like wheelchairs

7  and oxygen tanks.  Prostek has no recollection of seeing or signing an arbitration agreement.

8      Prostek declares that while she was revieing and signing the paperwork, Eaton talked

9  incessantly about her personal life, which distracted Prostek.  Prostek declares that Eaton's talking

10  distracted her and made it impossible for her (Prostek) to properly review the paperwork.  Eaton

11  only stopped talking momentarily to instruct Prostek to sign documents, and when Prostek signed

12  one document, Eaton would immediately give her another document.  Eaton said that the

13  documents had to be signed that day and remarked at one point that "we need to hurry up."

14  Prostek declares that this made her feel rushed.  No one reviewed any of the paperwork that

15  Prostek was signing or explained to Prostek what any of the paperwork meant, with the exception

16  of a training checklist and safety procedures.  Prostek declares that Defendants did not allow her

17  time to carefully review the documents or consult with an attorney before signing and did not

18  provide her with a copy of the paperwork that she signed.

19      Included within the stack of papers was a document entitled "Mutual Agreement to

20  Arbitrate Between [LI] and Employee" ("the Arbitration Agreement").  See Adams Dec. Ex. 1.

21  This Agreement is a ten-page document, is printed in a legible 14-point (or so) font, and contains

22  nine sections and some subsections.  See id.  In relevant part, the Arbitration Agreement reads:

23      The parties recognize that differences may arise between them in connection with
        the employment relationship, and the services and consideration to be provided
24      thereby, and wish to adopt a dispute resolution procedure that will avoid the delay,
        expense and burden of litigation in the civil court system and, by this Agreement,
25      mutually waive their right to pursue "Covered Claims" . . . in civil Court.  By
        entering this Agreement, both Parties intend to gain the advantage of a speedy,
26      economical, and impartial dispute-resolution procedure.

27      1.    Binding Arbitration

28      In the event that the Parties are unable to resolve any dispute arising out of, relating

2

to or in connection with the employment relationship, after meeting and attempting in good faith to reach a negotiated resolution, such dispute(s) shall be resolved through binding arbitration conducted in accordance with this Agreement.  Each Party hereto hereby consents to the exclusive personal subject matter jurisdiction of the arbitration proceedings provided in this Agreement.

This Agreement shall set forth the full and complete agreement between the Parties concerning the matters addressed herein and shall supersede all prior oral or written agreements concerning these matters.

……..

3.      Covered Claims Subject to Arbitration

The term "Covered Claims" includes all claims or disputes arising out of, relating to, or in connection with the employment relationship, and any services and consideration provided thereby, that Lincare may have against the Employee, or that the Employee may have against Lincare . . . .  However, Covered Claims does not include those claims set for in the Excluded Claims section of this Agreement.[1]  Covered Claims include, but are not limited to, any dispute of any nature relating to the employment relationship, including . . . failure to pay wages, bonuses or any other form of compensation; failure to provide rest or meal periods; failure to pay or pay on time; wage statement violations . . . .  Unless expressly excluded . . ., Covered Claims shall include any and all procedural, substantive and gateway issues, including, without limitation, any dispute between the Parties relating to the scope of the arbitrator's powers, the interpretation or enforceability of this Agreement or any part thereof, or the arbitrability of any dispute.

…….

5.      Arbitration Is the Exclusive Remedy

Arbitration pursuant to this Agreement shall be the exclusive remedy for resolving any such arbitrable disputes or Covered Claims, and the Parties mutually waive their right to trial before a judge or jury in federal or state court in favor of arbitration under this Agreement. . . .

This Agreement shall be governed and construed in accordance with the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.  . . .

6.      Class Action Waiver

All Covered Claims under this Agreement shall be submitted and arbitrated on an individual basis only.  The Parties expressly waive any right to submit, initiate or participate in any class, collective, consolidated, representative, or joint action involving any employee . . . of Lincare, whether as a plaintiff, claimant, or member of an alleged class or group, regardless of whether the action is filed as a lawsuit, arbitration, or any other type of proceeding.  In addition, the Parties mutually waive their right to bring, maintain, participate in or receive money from any class, collective or representative proceeding.

In the event that a dispute arises with respect to the interpretation or enforceability

---

[1] The arbitration agreement excluded disputes relating to the meaning, interpretation, or enforceability of a class action waiver; state or federal disability insurance or workers' compensation benefits; ERISA claims; administrative charges or claims with the EEOC; and claims under the NLRA.

of this Class Action Waiver section, such dispute shall be resolved by a court of competent jurisdiction located in the State of California, and not by arbitration. . . .

….

THE EMPLOYEE ACKNOWELDGES THAT:  (1) I HAVE CAREFULLY READ THIS MUTUAL AGREEMENT TO ARBITRATE; (2) I HAVE BEEN GIVEN THE OPPORTUNITY TO REVIEW THIS AGREEMENT WITH MY LEGAL COUNSEL; AND (3) I HAVE AVAILED MYSELF OF THAT OPPORTUNITY OT THE EXTENT I WISH TO DO SO.

Id.  The Arbitration Agreement was signed by Shiraz Mohammed as LI's head of human resources and purports to be signed by Prostek on May 11, 2021.  See id.

Prostek did not draft any of the terms of the Arbitration Agreement and had no ability to negotiate any terms.  Prostek declares that she has a high school education, some college, and vocational training, and she had never heard of arbitration.  Prostek declares that if she had known what the alleged Arbitration Agreement meant, she would not have signed it.

During the course of her employment, Defendants allegedly did not:  (1) provide off-duty and uninterrupted meal and rest breaks; (2) compensate for missed meal and rest breaks; (3) provide compliant wage statements; (4) properly maintain employment records; (5) pay for all hours worked by employees; (5) reimburse employees for the employee's out of pocket business expenses.  Prostek's employment with Defendants ended in April 2022.

**LEGAL FRAMEWORK**

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; Zoller v. GCA Advisors, LLC, 993 F.3d 1198, 1201 (9th Cir. 2021). Further, the FAA permits a party "aggrieved by the alleged . . . refusal to arbitrate" to petition any federal district court for an order compelling arbitration.  9 U.S.C. § 4; Van Dusen v. United States Dist. Court for the Dist. of Ariz., 654 F.3d 838, 842 (9th Cir. 2011).  When a party moves to compel arbitration, a district court's role is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Johnson v. Walmart Inc., 57 F.4t h 677, 680 (9th Cir. 2023) (quoting Chiron Corp. v. Ortho

1  Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)).  If the answer to both questions is

2  'yes,' the district court must enforce the arbitration agreement in accordance with its terms; there

3  is no place for discretion by the district court.  Revitch v. DIRECTV, LLC, 977 F.3d 713, 716 (9th

4  Cir. 2020).  Thus, "courts should order arbitration of a dispute only where the court is satisfied

5  that neither the formation of the parties' arbitration agreement nor (absent a valid provision

6  specifically committing such disputes to an arbitrator) its enforceability or applicability to the

7  dispute is in issue."  Granite Rock Co. v. International Bhd. Of Teamsters, 561 U.S. 287, 299

8  (2010); Revitch, 977 F.3d at 716.  Doubts concerning the scope of an arbitration clause are

9  resolved in favor of arbitration, but no presumption exists concerning whether an agreement to

10  arbitrate was made.  Johnson, 57 F.4th at 680-81.  "When determining whether parties have agreed

11  to submit to arbitration, courts apply state-law principles of contract formation and interpretation."

12  Suski v. Coinbase, Inc., 55 F.4th 1227, 1230 (9th Cir. 2022).  The party seeking to compel

13  arbitration bears the burden of proving by a preponderance of the evidence that the parties formed

14  an agreement to arbitrate.  Reichert v. Rapid Invs., Inc., 56 F.4t h 1220, 1227 (9th Cir. 2022);

15  Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014).

16

17  **DEFENDANTS' MOTION**

18  *Defendants' Arguments*

19      Defendants argue that the Arbitration Agreement was mutually agreed to and supported by

20  sufficient consideration between LI and Prostek.  Further, the Arbitration Agreement states that

21  the FAA governs, uses broad language that covers all of the claims alleged in the Complaint, and

22  includes a waiver of the right to participate in, bring, or collect money from a class, representative,

23  collective, joint, or consolidated action.  The Arbitration Agreement is not procedurally

24  unconscionable since it is a stand-alone document with normal font and clear language and bold

25  capitalized language at the beginning and end of the document.  The Arbitration Agreement is also

26  not substantively unconscionable because it binds both Defendants and Prostek and incorporates

27  the rules of the American Arbitration Association.  Under these circumstances, Prostek's class

28  claims should be dismissed and her individual claims should be submitted to binding arbitration.

Additionally, although the Arbitration Agreement does not affect Prostek's representative PAGA claim, under *Viking River Cruises*, because the Arbitration Agreement applies to Prostek's individual PAGA claim, Prostek does not have standing to prosecute a representative PAGA claim in state court.  To the extent that Prostek may argue that the Arbitration Agreement's wholesale waiver of PAGA claims is invalid, the Arbitration Agreement contains a severability clause that would permit excising the improper aspect of the wholesale wavier.

> *Plaintiff's Opposition*

Prostek argues that Defendants' motion should be denied for several reasons.

First, the purported Arbitration Agreement has not been adequately authenticated. Defendants' head of employee relations who submitted an authenticating declaration does not state any facts to show that she actually has personal knowledge of the alleged signing of the Arbitration Agreement, does not assert that the agreement was identified or explained to Prostek, and does not explain how any employees sign documents (if they actually do so).

Second, the Arbitration Agreement lacks mutual assent.  Prostek argues that she has no recollection of signing the Arbitration Agreement and that she would not have signed it if she knew of its existence.  Pursuant to *Gamboa v. Northeast Community Clinic* and *Trinity v. Life Ins. Co. of N. Am.*, mutual assent is absent and the Arbitration Agreement is unenforceable.

Third, the Arbitration Agreement is procedurally and substantively unconscionable. Procedurally, Prostek argues that she had no opportunity to review the Agreement or seek legal advice, she did not know of the Agreement's existence, she did not draft the Agreement, no one explained the Agreement's meaning, and she had no opportunity to negotiate the Agreement's terms or to opt out of it.  Further, the Agreement does not sufficiently explain the advantages and disadvantages of arbitration.  Courts have found that these circumstances render an agreement procedurally unconscionable.  With respect to substantive unconscionability, the Agreement contains an unlawful waiver of PAGA claims, improperly waives the right to receive money or any other form of relief from a class action, collective or representative proceeding in violation of Labor Code § 206.5, and improperly benefits Defendants by primarily requiring arbitration of the types of claims that only employees bring against employers.

Relatedly, severance will not save the Arbitration Agreement.  There is no single provision that can be severed to remove the unconscionable taint, and the terms of the Agreement indicate that that it is an impermissible effort to impose arbitration for Defendants' advantage.

### *Discussion*

As an initial matter, there is no dispute regarding the scope of the Arbitration Agreement. The Arbitration Agreement covers "all claims or disputes arising out of, relating to or in connection with the employment relationship . . . that [LI] may have against [Prostek], or that [Prostek] may have against [LI] . . . ."  This is very broad language.  Cape Flattery Ltd. v. Titan Mar., LLC, 647 F.3d 914, 922 (9th Cir. 2011).  As such, the claims alleged in the Complaint clearly "arise out of" or "relate to" Prostek's former employment with Defendants.  See id.  The issues raised by Prostek involve contract formation and the validity of the Arbitration Agreement.

### 1.   Formation

Prostek argues that Defendants have failed to show that an agreement to arbitrate was formed because the agreement submitted by Defendants has not been properly authenticated.

To authenticate evidence, a party must "produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a); American Fed'n of Musicians of the U.S. v. Paramount Pictures Corp., 903 F.3d 968, 976 (9th Cir. 2018); see United States v. Workinger, 90 F.3d 1409, 1415 (9th Cir. 1996).  The proponent of the evidence "need only make a prima facie showing of authenticity so that a reasonable juror could find in favor of authenticity or identification."  American Fed. of Musicians, 903 F.3d at 976; Workinger, 90 F.3d at 1415.  There are many methods of authenticating evidence, see Fed. R. Evid. 901(b), and the proponent's burden has been characterized as "not high."  United States v. Recio, 884 F.3d 230, 236-37 (4th Cir. 2018); Kalasho v. BMW of N. Am., LLC, 520 F.Supp.3d 1288, 1293 (S.D. Cal. 2021).

Here, the Arbitration Agreement purports to have Prostek's signature, is dated May 11, 2021, and has been provided to the Court as Exhibit 1 to the declaration of Paula Adams.  Adams declares that she is the Head of Employee Relations for LI and that she has personal knowledge of the facts set forth in her declaration.  See Adams Dec. ¶ 1.  Adams explains that in her position,

she is familiar with the record-keeping requirements and procedures of LI, is familiar with LI's procedures for maintaining personnel records, and has access to personnel files that reflect dates of employment and positions held.  See id. at ¶ 3.  Based on her review of the personnel records, Prostek was hired on May 11, 2021 as a customer service representative.  See id. at ¶ 4.  Finally, Adams declares that Prostek signed the Arbitration Agreement at the beginning of her employment and that the provided Arbitration Agreement signed by Prostek on May 11 is maintained in the ordinary course of business.  See id. at ¶ 5.

Adams's declarations demonstrates that, as the head of LI's employee relations department, she is familiar with and has personal knowledge of LI's hiring practices, record keeping practices, and personnel files, and has access to those files.  The signed Arbitration Agreement was a document that was created at the time Prostek began her employment and it was kept in the ordinary course of LI's business.  Moreover, Prostek's name and handwritten signature are on the Arbitration Agreement, and Prostek does not deny that it is her signature.  Although Prostek points out a number of details that Adams's declaration does not include, such details are not necessary; all that is necessary is evidence that is "sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a); American Fed'n of Musicians, 903 F.3d at 976; Workinger, 90 F.3d at 1415.  Therefore, the Court concludes that Defendants have met their "not high" burden of making a prima facie showing that the Arbitration Agreement was a document signed by Prostek.  See Fed. R. Evid. 901(a); American Fed. of Musicians, 903 F.3d at 976; Recio, 884 F.3d at 236-37; Workinger, 90 F.3d at 1415.

Relying principally on Gamboa, Prostek argues that her declaration demonstrates that there was no contract formation and that Adams's declaration does not adequately authenticate the Arbitration Agreement.  In Gamboa, the Court of Appeal determined that an arbitration agreement was not adequately authenticated because the authenticating witness (the defendant's director of human resources) had failed to demonstrate adequate personal knowledge of key facts.  See Gamboa v. Northeast Community Clinic, 72 Cal.App.5th 158, 169 (2021).  Further, the Gamboa court concluded that even if the arbitration agreement had been authenticated, the lower court did not err by concluding that the plaintiff had sufficiently challenged the contract formation and that

1  defendants had failed to prove that the agreement was valid by a preponderance of the evidence.

2  See id. at 167.  Of note, the plaintiff declared that she did not recall the arbitration agreement and

3  would not have signed the document if she had been aware of it.  See id. at 170-71.

4  After consideration, the Court is not persuaded that *Gamboa* controls.  First, *Gamboa*'s

5  authentication framework and analysis are based on Cal. Evid. Code § 403.  See id. at 168-69.  In

6  federal court, the federal rules of evidence apply.  See Fed. Rs. Evid. 101(a), 1101; In re Taxotere

7  (Docetaxel) Prods. Liab. Litig., 26 F.4t h 256, 265 n.8 (5th Cir. 2022); Primiano v. Cook, 598 F.3d

8  558, 563 (9th Cir. 2010); Park v. City of Chicago, 297 F.3d 606, 611 (7th Cir. 2002); United

9  States v. Yin, 935 F.2d 990, 996 (9th Cir. 1991).  In particular, Fed. R. of Evid. 901 sets the

10  applicable federal evidentiary standard for authentication.  See Yin, 935 F.2d at 995-96.  Because

11  Rule 901(a) controls, neither Cal. Evid. Code § 403 nor *Gamboa*'s authentication analysis applies

12  to this case.  See id.; see also Primiano, 598 F.3d at 563; Park, 297 F.3d at 611.  As discussed

13  above, Adams's declaration was sufficient to meet Rule 901(a)'s standard.

14  Second, *Gamboa* cited and relied on *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal.App.4th

15  836 (2014) and *Fabian v. Renovate Am., Inc.*, 42 Cal.App.5th 1062 (2019) in finding that the

16  defendant had failed to demonstrate that an agreement to arbitrate existed.  See Gamboa, 72

17  Cal.App.5th at 168, 170.  The purported arbitration agreements in *Ruiz* and *Fabian* contained the

18  plaintiffs' respective electronic signatures or electronic initials.  See Fabian, 42 Cal.App.5th at

19  1065; Ruiz, 232 Cal.App.4th at 840.  Further, the *Ruiz* plaintiff did not recall electronically

20  signing the arbitration agreement, and the *Fabian* plaintiff stated that she was not provided with

21  any documents to sign and did not in fact electronically sign any arbitration agreement.[2]  See

22  Fabian, 42 Cal.App.5th at 1065; Ruiz, 232 Cal.App.4th at 840.

23

24  [2] A similar factual scenario applies to three cases cited by Prostek, but not *Gamboa*:  *Trinity v. Life Ins. Co. of Am.*, 78 Cal.App.5th 1111 (2022), *Bannister v. Marinidence Opco, LLC*, 64 Cal.App.5th 541 (2021) and *Espejo v. Southern*

25  *Cal. Permanente Med. Grp.*, 246 Cal.App.4t h 1047 (2016).  *Bannister* involved a purported electronic signature and an assertion by the plaintiff that she never saw the arbitration agreement and did not affix her electronic signature on

26  the document.  See Bannister, 64 Cal.App.5th at 545.  *Espejo* involved an electronic signature and a declaration that the plaintiff did not recall the arbitration agreement and only recalled affixing his electronic signature to a separate

27  employment contract.  See Espejo, 246 Cal.App.5th at 1054.  *Trinity* involved electronic "acknowledgments" and clicking a "Done" button, and the plaintiff declared that she never saw, received, agreed, or signed an arbitration

28  agreement.  See Trinity, 78 Cal.App.5th at 1116-17.

1    In this case, Prostek states that she does not recall any arbitration agreement and would not

2 have signed one if she had seen and understood it.  However, this case does not involve any

3 electronic documents or signature, and Prostek does not deny that the signature on the Arbitration

4 Agreement is hers or claim that the signature was somehow forged.  These facts are key.

5    It is true that *Gamboa* recognized *Ruiz* and *Fabian* involved electronic signatures on a

6 purported arbitration agreement and Gamboa's signature was handwritten.  See id. at 168.

7 However, because a handwritten signature and an electronic signature are equally enforceable and

8 have the same legal effect, the *Gamboa* court found the fact that Gamboa's signature was

9 handwritten and not electronic was an immaterial distinction.  See id.  Recently, however, another

10 California Court of Appeal has criticized and declined to follow *Gamboa* on this point.

11    In *Iyere v. Wise Auto Group*, 87 Cal.App.5th 747 (2023), the defendant submitted written

12 arbitration agreements that bore the handwritten signatures of the plaintiffs.  See Iyere, 87

13 Cal.App.5th at 751.  In opposing the motion to compel, the plaintiffs alleged that they were

14 handed a large stack of documents to sign and fill out, they were rushed to sign the documents,

15 and they signed the documents presented to them.  See id. at 752.  The plaintiffs also stated that

16 they were not given copies of the documents they signed, the first time they saw the arbitration

17 agreement was when a lawyer showed them the documents, they did not recall reading or signing

18 an arbitration agreement, they did not know how their signatures were placed on the agreements,

19 and if they knew they were giving up their right to file a lawsuit, then they would have never

20 signed any arbitration agreement.  See id.  In relevant part, the trial court found that the defendant

21 failed to meet its burden of proving the authenticity of the plaintiffs' signatures.  See id. at 754.

22 The Court of Appeal reversed and explained:

23    [Plaintiffs'] evidence does not create a factual dispute as to whether plaintiffs
     signed the agreement. The declarations explicitly acknowledge that plaintiffs
24    signed a "stack of documents" and do not deny that the stack included the
     agreement. Although plaintiffs state they do not recall signing the agreement, there
25    is no conflict between their having signed a document on which their handwritten
     signature appears and, two years later, being unable to recall doing so.  In the
26    absence of any evidence that their purported signatures were not their own, there
     was no evidence that plaintiffs did not in fact sign the agreement.

27

28 Id. at 756.  *Iyere* also distinguished two of the cases cited by Prostek, *Ruiz* and *Bannister*, on the

10

basis that those cases involved electronic signatures.  See id. at 756-57.  *Iyere* observed that an

"individual cannot confirm or deny the authenticity of an electronic signature by viewing a

computer printout of the person's printed name followed by the words 'Electronic Signature.'"  Id.

at 757.  But "an individual is capable of recognizing his or her own personal signature.  If the

individual does not deny the handwritten personal signature is his or her own, that person's failure

to remember signing is of little or no significance."  Id.  Importantly, *Iyere* also cited and

disagreed with *Gamboa*'s conclusion that there is not a material difference between a handwritten

versus an electronic signature.  *Iyere*  explained:

> While handwritten and electronic signatures once authenticated have the same legal effect, there is a considerable difference between the evidence needed to authenticate the two. Authenticating an electronic signature if challenged can be quite daunting. (See, e.g., Espejo, supra, 246 Cal.App.4th at pp. 1061–1062.) An individual cannot affirm or disavow an electronic signature from the face of a computer printout, but an individual normally can recognize or disavow a handwritten signature that purports to be his or her own. (See, e.g., Arkwright Mut. Ins. Co. v. State St. Bank & Trust Co. (1998) 428 Mass. 600, 603–604 [703 N.E.2d 217, 220] [time limit for claim against bank based on forged check "'recognizes that there is little excuse for a customer not detecting an alteration of his own check or a forgery of his own signature' "], quoting Official Com. to Uniform Com. Code, § 4–406.5, 2B West's U. Laws Ann. 401 (master ed. 1991).) If a party confronted with his or her handwritten signature on an arbitration agreement is unable to allege that the signature is inauthentic or forged, the fact that that person does not recall signing the agreement neither creates a factual dispute as to the signature's authenticity *nor affords an independent basis to find that a contract was not formed.*
> . . . . .
>
> Moreover, as indicated above, plaintiffs acknowledged that although they did not read the papers, they did sign those included in the "stack of documents" with which they were presented. It is hornbook law that failing to read an agreement before signing it does not prevent formation of a contract. (Upton, Assignee v. Tribilcock (1875) 91 U.S. 45, 50 ["It will not do for a [person] to enter into a contract, and, when called upon to respond to its obligations, to say that [they] did not read it when [they] signed it, or did not know what it contained."]; Hawkins v. Hawkins (1875) 50 Cal. 558, 560 [similar]; 1 Williston on Contracts (4th ed. 2007) § 4:19.) That settled rule cannot be evaded by adding, "and if I had read the contract, I wouldn't've signed it." Plaintiffs' allegation as to why they did not read the contract before signing it—i.e., that they were pressured to sign it quickly and not given time to read it—is material only to whether enforcement of the agreement is barred by the defense of unconscionability, to which we now turn.

Id. at 758-59 (emphasis added).

The Court finds the analysis of *Iyere* to be persuasive and more consistent with the prior

relevant California authority cited by *Gamboa* and by Prostek.  All of the relevant cases cited by

Prostek involve an electronic signature. *Gamboa* is the only case that has found that a lack of recollection and a denial that the person would have signed an arbitration agreement may be sufficient to defeat a motion to compel, even if there is a handwritten signature and no denial of the signature's authenticity. As *Iyere* points out, it is a little thing for a person to confirm or deny her signature. That is not necessarily the case with an electronic signature or acknowledgment. Theoretically, and depending on the circumstances, anyone can type a name, click a box, or click "done." In contrast, forging signature take a more "skill" and is not accomplished by merely typing keys on a keyboard. If a party cannot challenge a handwritten signature, there is no basis to conclude that the signature was skillfully forged or that the party did not actually sign the document. See id.

Under *Iyere*, Prostek's acknowledgement that she signed a "stack of documents," combined with her failure to deny the authenticity of her handwritten signature on the Arbitration Agreement is determinative. Prostek's contrary arguments regarding formation are insufficient under *Iyere* and provide no "basis to find that a contract was not formed." Id. Therefore, the Court concludes that the Arbitration Agreement is authentic, see Fed. R. of Evid. 901(a); American Fed. of Musicians, 903 F.3d at 976, and that Defendants and Prostek entered into the Arbitration Agreement. See Iyere, 87 Cal.App.5th at 756-59.

### 2. Unconscionability

Unconscionability is a recognized basis to invalidate an arbitration agreement. See Lim v. TForce Logistics, LLC, 8 F.4th 992, 999 (9th Cir. 2021); Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1259 (9th Cir. 2017). The party opposing arbitration has the burden of establishing that an arbitration agreement is unconscionable. See Lim, 8 F.4th at 999; Poublon, 974 F.3d at 1060. State law determines whether an agreement is invalid due to unconscionability. See Shivkov v. Artex Risk Sols., Inc., 974 F.3d 1051, 1059 (9th Cir. 2020); Kilgore v. KeyBank Nat'l Ass'n, 718 F.3d 1052, 1058 (9th Cir. 2013). Under California law, unconscionability has a procedural element and a substantive element. See OTO, LLC v. Kho, 8 Cal.5th 111, 125 (2019); Iyere, 87 Cal.App.5th at 759; see also Lim, 8 F.4th at 1000-01; Poublon, 846 F.3d at 1260-61. The procedural element addresses the circumstances of contract negotiation and formation, focusing on

oppression and surprise due to unequal bargaining power, while the substantive element pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.  OTO, 8 Cal.5th at 125; see Lim, 8 F.4th at 1000-01; Poublon, 846 F.3d at 1260-61; Iyere, 87 Cal.App.5th at 759.  While both the procedural and substantive elements must be present to establish unconscionability, they need not be present in the same degree.  Lim, 8 F.4th at 1000; Poublon, 846 F.3d at 1260; OTO, 8 Cal.5th at 125; Baltazar v. Forever 21, Inc., 62 Cal.4th 1237, 1243 (2016).  There is essentially a "sliding scale" that applies, and the more one element is present, the less present the other element need be.  See Lim, 8 F.4th at 1000; Poublon, 846 F.3d at 1260; OTO, 8 Cal.5th at 125-26; Baltazar, 62 Cal.4th at 1243-44; Iyere, 87 Cal.App.5th at 759.

### a.   Procedural Unconscionability

The procedural unconscionability analysis begins by determining whether the agreement is a contract of adhesion, which is a standardized contract offered by the party with superior bargaining power on a take-it-or-leave-it basis.  OTO, 8 Cal.5th at 126; Beco v. Fast Auto Loans, Inc., 86 Cal.App.5t h 292, 307 (2022); see also Lim, 8 F.4th at 1000-01; Poublon, 846 F.3d at 1260-61.  If a contract is one of adhesion, courts must assess whether the circumstances of the contract's formation created such oppression or surprise that closer scrutiny of the contract's overall fairness is required. See OTO, 8 Cal.5th at 126; Beco, 86 Cal.App.5th at 307.  "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form."  OTO, 8 Cal.5th at 126; Beco, 86 Cal.App.5th at 307.  Employment contracts are typically contracts of adhesion. OTO, 8 Cal.5th at 126; Beco, 86 Cal.App.5th at 307.  However, "if an employee must sign a non-negotiable employment agreement as a condition of employment but 'there is no other indication of oppression or surprise,' then 'the agreement will be enforced unless the degree of substantive unconscionability is high.'"  Poublon, 846 F.3d at 1261 (quoting Serpa v. Cal. Sur. Investigations, Inc., 215 Cal.App.4th at 695, 704 (2013)) (footnote omitted).

Here, there is no dispute that the Arbitration Agreement was a contract of adhesion and that Prostek was required to sign it as a condition of employment.  This is sufficient to show at least some procedural unconscionability.  See Poublon, 846 F.3d at 1261-62; Ramirez v. Charter

Communications, Inc., 75 Cal.App.5th 365, 373 (2022).  Further, Prostek declared that she was told that she had to sign all of the documents that day, was handed documents to sign one after the other, and that Eaton remarked that they needed to hurry up because of the time.  See Prostek Dec. ¶ 4.  The Court agrees that this contributed to a sense of being rushed through the signing process for all documents, including the Arbitration Agreement.  Cf. OTO, 8 Cal.5th at 126-27 (indicating that the amount of time given to consider an agreement may be considered in establishing procedural unconscionability).  Given these considerations, Prostek has met the procedural unconscionability element.

### b.    Substantive Unconscionability

Substantive unconscionability examines the fairness of a contract's terms and is concerned about terms that are unreasonably favorable to the more powerful party.  Lim, 8 F.4th at 1001-02; OTO, 8 Cal.5th at 129.   "Unconscionable terms impair the integrity of the bargaining process or otherwise contravene the public interest or a public policy or attempt to impermissibly alter fundamental legal duties.  They may include fine-print terms, unreasonably or unexpectedly harsh terms regarding price or other central aspects of the transaction, and terms that undermine the nondrafting party's reasonable expectations."  OTO, 8 Cal.5th at 130 (quoting Sonic-Calabasas A, Inc. v. Moreno, 57 Cal.4th 1109, 1145 (2013)); see Gostev v. Skillz Platform, Inc., -- Cal.App.5th ---, 2023 Cal.App. LEXIS 139, *20-*21 (2023).  "Substantive terms that, in the abstract, might not support an unconscionability finding take on greater weight when imposed by a procedure that is demonstrably oppressive."  OTO, 8 Cal.5th at 130.

Here, Prostek argues that the Arbitration Agreement is unconscionable because it contains: (1) an unlawful PAGA waiver; (2) a pre-dispute waiver in violation of Labor Code § 206.5(a) and improperly insulates an employer from equitable relief and paying wages actually owed; and (3) a definition of "covered claims" that is too one-sided.  The Court will address each point separately.

### (i)    PAGA Waiver

PAGA permits an aggrieved employee,[3] on behalf of himself and other current or former

---

[3] An "aggrieved employee" is "any person who was employed by the alleged violator and against whom one or more of the alleged [Labor Code] violations was committed."  Cal. Lab. Code § 2699(c).

aggrieved employees, and as a proxy on behalf of the State of California, to bring suit in order to recover various statutory penalties provided under the California Labor Code, <u>see</u> Cal. Lab. Code § 2699(a); <u>Viking River Cruises, Inc. v. Moriana</u>, 142 S.Ct. 1906, 1916 (2022); <u>Arias v. Superior Ct.</u>, 46 Cal.4t h 969, 980-81, 986 (2009), with 75% of the recovered penalties going to the California Labor and Workforce Development Agency and 25% of recovered penalties going to all aggrieved employees.  <u>See</u> Cal. Lab. Code §§ 2699(i); <u>Arias</u>, 46 Cal.4th at 980-81.  Due to FAA preemption, a PAGA claim can be divided into individual and non-individual claims through an agreement to arbitrate.  <u>See</u> <u>Viking River</u>, 142 S.Ct. at 1924.  A PAGA waiver that waives an employee's right to recover statutory penalties for Labor Code violations that he personally suffered (often called an "individual PAGA claim") is valid.  <u>See</u> <u>Viking River</u>, 142 S.Ct. at 1924-25; <u>Piplack v. In-N-Out Burgers</u>, --- Cal.App.5th ---, 2023 Cal.App. LEXIS 166, *7-*9 (2023); <u>Galarsa v. Dolgen Cal., LLC</u>, 88 Cal.App.5th 639, 648-52 (2023); <u>Mills v. Facility Solutions Grp., Inc.</u>, 84 Cal.App.5th 1035, 1063 (2022).  A PAGA waiver that waives an employee's ability to recover for Labor Code violations suffered by other aggrieved employees (often called a "representative PAGA claim") is invalid as against California's public policy.  <u>See</u> <u>Viking River</u>, 142 S.Ct. at 1924-25; <u>Piplack</u>, 2023 Cal.App. LEXIS 166 at *7-*9; <u>Galarsa</u>, 88 Cal.App.5th at 648-52; <u>Mills</u>, 84 Cal.App.5th at 1063.

Here, without limitation, the Arbitration Agreement waives Prostek's right to initiate or participate in any representative action.  <u>See</u> Adams Dec. Ex. 1 at ¶ 6.  This is a broad waiver that captures representative PAGA claims.  <u>See</u> <u>id.</u>  Such a waiver is invalid as contrary to California's public policy.  <u>See</u> <u>Viking River</u>, 142 S.Ct. at 1924-25; <u>Piplack</u>, 2023 Cal.App. LEXIS 166 at *7-*9; <u>Galarsa</u>, 88 Cal.App.5th at 648-52; <u>Mills</u>, 84 Cal.App.5th at 1063.  Because the representative PAGA waiver violates public policy, inclusion of the waiver is substantively unconscionable.  <u>See</u> <u>Navas</u>, 85 Cal.App.5th at 635; <u>Cardenas-Cuevas v. Arbonne Int'l, LLC</u>, 2019 Cal.App. Unpub. LEXIS 1758, *10-*11 (Mar. 14, 2019);[4] <u>Brown v. Ralphs Grocery Co.</u>, 197 Cal.App.4t h 489, 496, 503-04 (2011); <u>see also</u> <u>Brown v. Ralphs Grocery Co.</u>, 28 Cal.App.5th 824, 831 (2018).

---

[4] Notwithstanding state appellate rules, the Court may consider unpublished California appellate decisions as persuasive authority.  <u>See</u> <u>Employers Ins. of Wausau v. Granite State Ins. Co.</u>, 330 F.3d 1214, 1220 n.8 (9t h Cir. 2003); <u>Robles v. Agreserves, Inc.</u>, 158 F.Supp.3d 952, 976 n.12 (E.D. Cal. 2016).

(ii)     Labor Code § 206.5

In relevant part, Labor Code § 206.5 reads:

> An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made. A release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee.

Cal. Lab. Code § 260.5(a); Estrada v. Royalty Carpet Mills, Inc., 76 Cal.App.5th 685, 707-08 (2022); Pulli v. Pony Int'l, LLC, 206 Cal.App.4th 1507, 1517-18 (2012); Watkins v. Wachovia Corp., 172 Cal.App.4th 1576, 1586 (2009).  Section 206.5 is read in conjunction with Labor Code § 206.  See Estrada, 76 Cal.App.5th at 708; Pulli, 206 Cal.App.4th at 1519-20; Watkins, 172 Cal.App.4th at 1586-87.  In relevant part, Labor Code § 206 reads:  "In case of a dispute over wages, the employer shall pay, without condition . . . all wages, or parts thereof, conceded by him to be due, leaving to the employee all remedies he might otherwise be entitled to as to any balance claimed."  Cal. Lab. Code § 206(a); Estrada, 76 Cal.App.5th at 708; Pulli, 206 Cal.App.4th at 1519; Watkins, 172 Cal.App.4th at 1586.  Together, these statutes prohibit an employer form coercing a settlement by withholding wages concededly due.  Estrada, 76 Cal.App.5th at 708; Pulli, 206 Cal.App.4th at 1519-20; Watkins, 172 Cal.App.4th at 1587.  If there is a bona fide dispute as to whether wages are owed, then the disputed wages are not "due" for purposes of Labor Code § 206.5.  Estrada, 76 Cal.App.5th at 708; Watkins, 172 Cal.App.4th at 1587.

In this case, Labor Code § 206.5 has no application.  There is no indication that there was any dispute, bona fide or otherwise, with respect to wages due to Prostek.  Indeed, since Prostek was signing on-boarding paperwork, it is unclear whether any wages would have been due at the time Prostek signed.  Moreover, the Arbitration Agreement does not purport to settle and release any claims whatsoever, particularly wages due; it merely determines the forum in which legal disputes will be resolved.  Simply put, "[r]equiring an employee to agree to an arbitration provision is not a method of coercing a settlement."  Pulli, 206 Cal.App.4th at 1520.  Thus, the Arbitration Agreement is not substantively unconscionable through operation of § 206.5.

As part of their arguments regarding Labor Code § 206.5, Plaintiffs contend that the Arbitration Agreement's release of PAGA penalties and injunctive and equitable relief, including

equitable relief under the UCL, are invalid because the seek to insulate Defendants from unlawful business practices and relief that benefits the public.

It is true that an arbitration agreement (or any other contract) cannot waive a plaintiff's right to seek a UCL public injunction in any forum.  See Blair v. Rent-A-Center, Inc., 928 F.3d McGill v. Citibank, N.A., 2 Cal.5th 945, 961-62 (2017); Vaughn v. Tesla, Inc., 87 Cal.App.5th 208, 227 (2023).  That is, an agreement cannot bar a public injunction in every forum.  See Mejia v. DACM, Inc., 54 Cal.App.5th 691, 704 (2020); see also McGill, 2 Cal.5th at 956 (arbitration clause prohibited the plaintiff from "seeking public injunctive relief in arbitration, in court, or in any forum.").  A public injunction is an injunction that "by and large benefits the general public and that benefits the plaintiff, if at all, only incidentally and/or as a member of the general public." McGill, 2 Cal.5th at 955; Vaughn, 87 Cal.App.5th at 227.

Here, the Court does not find that the prohibition against public injunctive relief applies. First, Prostek has not identified any provision of the Arbitration Agreement that prohibits her from seeking public injunctive relief under the UCL.  Although Prostek cites the Arbitration Agreement's paragraph that waives "any right to submit, initiate or participate in any class, collective, consolidated, representative or joint action," as well as the right to "bring, maintain, participate in or receive money from any class, collective or representative proceeding," those provisions do not pertain to injunctions.  The waiver simply does not prohibit the issuance of public injunctions, nor does it prohibit Prostek from attempting to obtain a public injunction through arbitration.  Cf. Vaughn, 87 Cal.App.5th at 228 (finding that an agreement that required all covered claims to be arbitrated, but that forbad the arbitrator from granting non-individual relief, prevented the plaintiff from obtaining a public injunction in any forum).  Therefore, the Arbitration Agreement does not violate *McGill*'s prohibition against waiving public injunctions. See McGill, 2 Cal.5th at 955; Vaughn, 87 Cal.App.5th at 228.

Second, injunctive relief that primarily redresses or prevents injury to an induvial plaintiff or to a group of individuals similarly situated to the plaintiff is not public injunctive relief.  See McGill, 2 Cal.5th at 955; Torrecillas v. Fitness Int'l, Inc., 52 Cal.App.5th 485, 500 (2020); Clifford v. Quest Software, Inc., 38 Cal.App.5th 745, 753 (2019).  The wrongful conduct

1  described in the Complaint involves violations of the Labor Code relating to employee-employer

2  relationships and obligations, such as an entitlement to rest periods and wages.  Correcting this

3  practice would benefit Defendants' employees or former employees, who are similarly situated to

4  Prostek.  But it is unclear how the general public would benefit from preventing further violations

5  of the alleged Labor Code sections.  See Clifford, 38 Cal.App.5th at 753.  Thus, since the UCL

6  injunction requested in the Complaint is not a public injunction, the *McGill* rule does not apply.

7  See McGill, 2 Cal.5t h at 955; Torrecillas, 52 Cal.App.5th at 500; Clifford, 38 Cal.App.5th at 753.

8       In sum, Prostek has not demonstrate substantive unconscionability through operation of

9  either Labor Code § 206.5 or the *McGill* rule.

10               (iii)    One-Sided Claims

11       It is true that courts have found that arbitration agreements that apply to disputes arising

12  out of a termination and that expressly limit the claims and conduct of employees are unduly one-

13  sided and thus, unconscionable.  See Zullo Superior Ct., 197 Cal.App.4t h 477, 486 (2011); Stirlen

14  v. Supercuts, Inc., 51 Cal.App.4th 1519, 1540-41 (1997) (finding that arbitration agreement would

15  apply primarily if not exclusively to claims arising out of termination and that such claims were

16  "virtually certain" to be applied against the employer).  However, that is not the case here.

17       In this case, the Arbitration Agreement requires that "covered claims" be arbitrated.

18  Adams Dec. Ex. 1.  "Covered claims" are defined as "all claims or disputes arising out of, relating

19  to or in connection with the employment relationship, and any services and consideration provided

20  thereby, that [LI] may have against the Employee, or that the Employee may have against [LI]."

21  Id. at ¶ 3.  A number of non-exclusive causes of action/claims are then identified.  See id.  By its

22  express terms, the Arbitration Agreement, which was signed at the beginning of an employment

23  relationship, applies to all claims that Defendants and Prostek could have against each other that

24  arise out of Prostek's employment with Defendants.  This is not in the least one-sided.[5]

25       Prostek relies heavily on *Navas v. Fresh Venture Foods, LLC*, 85 Cal.App.5t h 626, 636

26  (2022).  In *Navas*, the arbitration agreement applied to "all legal claims between [employer] and

---

[5] As noted above, there are four claims that are excepted from the Arbitration Agreement.  See Footnote 1, *supra*.
Those claims would most likely be ones brought by Prostek.  Thus, the excepted claims would not make the
Arbitration Agreement unduly one-sided *against* Prostek.

[employee]," and listed nine "covered claims" as examples.  See Navas, 85 Cal.App.5th at 636.

The covered claims were:  termination of the employment relationship, federal and state wage and

hour claims, break and rest period claims, training claims, employee claims of discrimination,

employee claims about compensation, employee claims about harassment, and claims under state

and federal statutory and common law relating to similar matters.  See id.  Because the listed

claims were "the type of claims that *only* employees bring against employers," the agreement was

unfair to and unduly one-sided against employees.  See id.

Admittedly, the Arbitration Agreement also contains a "Covered Claims" section that is

very similar to *Navas*.  Like *Navas*, the Arbitration Agreement's Covered Claims section lists

claims of discrimination, harassment, compensation, and meal and rest breaks, as well as other

claims such as wage statement violations and retaliatory discharge.  See Adams Dec. Ex. 1 at ¶ 3.

These are claims likely to be brought by employees against employers.  However, the Court is not

persuaded by *Navas*.

First, the Arbitration Agreement's "Covered Claims" section is broader than the provision

in *Navas*.  The Arbitration Agreement's "Covered Claims" is expressly non-exclusive and

illustrative as it states that covered claims "include, but are not limited to, any claims or dispute of

any nature relating to the employment relationship, including . . . ."  Id.  More to the point, the

Arbitration Agreement also covers claims based on contract and violations of any common law or

statute, without limitation.  Such claims could equally be brought by an employer or an employee.

Second, and relatedly, *Navas* does not appear to be consistent with controlling California

Supreme Court authority.  In *Baltazar*, the employee argued that the agreement was substantively

unconscionable because *inter alia* it listed "only employee claims as examples of the types of

claims that are subject to arbitration."  Baltazar, 62 Cal.4th at 1248.  The California Supreme

Court rejected this argument and explained:

> The arbitration agreement at issue here makes clear that the parties mutually agree
> to arbitrate all employment-related claims: that is, "any claim or action arising out
> of or in any way related to the hire, employment, remuneration, separation or
> termination of Employee." That provision clearly covers claims an employer might
> bring as well as those an employee might bring. The illustrative list of claims
> subject to the agreement is just that; the agreement specifically states that such
> claims "include but are not limited to" the enumerated claims, thus making clear

that the list is not intended to be exhaustive. It thus casts no doubt on the comprehensive reach of the arbitration agreement. It is not particularly remarkable that the agreement's list of examples might highlight certain types of claims that employees often bring, since part of the purpose of the agreement is to put employees such as Baltazar on notice regarding the scope of the agreement, thus eliminating any possible surprise. The examples do not alter the substantive scope of the agreement, nor do they render the agreement sufficiently unfair as to make its enforcement unconscionable.

Id. at 1249.  The Court detects no material distinction between the Arbitration Agreement and the agreement in *Baltazar*.[6]  Therefore, *Baltazar*, not *Navas*, controls.

Pursuant to *Baltazar*, the Arbitration Agreement's broad "Covered Claims" sections covers all claims arising out of the employment relationship that could be brought by either Defendants or Prostek.  The illustrative examples in the "Covered Claims" section are non-exclusive illustrations that do not in any way limit the claims that may be brought by Prostek.  Therefore, there is no substantive unconscionability due to "one-sidedness."  See id.

3.    Severance

Prostek has demonstrated procedural and substantive unconscionability.  The Arbitration Agreement, however, contains a severability clause.  Under the Arbitration Agreement, if "any paragraph or provision within a paragraph . . . is determined to be illegal or unenforceable, such determination shall not affect the validity or enforceability of the remaining paragraphs or provisions within paragraphs . . . ."  Doc. No. 4-2 at ¶ 8.  The Arbitration Agreement then directs that a court "should reform this Agreement" in order to effectuate the intent of the parties.

Such severance provisions are enforceable and may be used to excise invalid provisions of an agreement to arbitrate.  See Viking River, 142 S.Ct. 1925; Grabowski v. C.H. Robinson Co., 817 F.Supp.2d 1159, 1179-80 (S.D. Cal. 2011); Little v. Auto Stiegler, Inc., 29 Cal.4th 1064, 1076 (2003); Farrar v. Direct Commerce, Inc., 9 Cal.App.5th 1257, 1275 (2017).  "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced.  If the illegality is collateral to the main purpose of the contract, the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance or restriction are

---

[6] *Navas* relied on *Zullo* and *Stirlen* to find that the "covered claims" section was too one-sided.  See Navas, 84 Cal.App.5th at 636.  However, the arbitration agreements in *Zullo* and *Stirlen* contained additional limitations and exceptions that were absent in *Navas*.  See Zullo, 197 Cal.App.4th at 481; Stirlen, 51 Cal.App.4th at 1528-29.  In contrast, the agreement in *Baltazar* is very similar to the agreement in *Navas* and the Arbitration Agreement. Cf. Baltazar, 62 Cal.4th at 1248-49 with Navas, 85 Cal.App.5th at 636 and Adams Dec. Ex. 1 at ¶ 3.

appropriate." <u>Little</u>, 29 Cal.4th at 1074 (quoting <u>Armendariz v. Foundation Health Psychare</u>

<u>Servs., Inc.</u>, 24 Cal.4th 83, 123-24 (2000)); <u>Murrey v. Superior Ct.</u>, 87 Cal.App.5th 1223, 1255

(2023).  Unconscionable contractual terms may be severed and the remaining agreement enforced,

unless the agreement is permeated by an unlawful purpose, or severance would require the court to

augment the agreement with additional terms.  <u>Ramirez v. Charter Commc'ns, Inc.</u>, 75 Cal. App.

5th 365, 386 (2022).  "There is no magic number of unconscionable provisions that will preclude a

court from deeming the entire agreement unenforceable."  <u>Murrey</u>, 87 Cal.App.5th at 1255; <u>see</u>

<u>also</u> <u>Grabowski</u>, 817 F.Supp.2d at 1180 (severing three substantively unconscionable clauses).

 Here, severance is appropriate.  The central purpose of the Arbitration Agreement is to

have nearly all employment related disputes resolved through arbitration.  Prostek has

demonstrated a single substantively unconscionable provision that affects one cause of action – a

representative PAGA claim.  Faced with an identical situation, the United States Supreme Court

had no difficulty in first severing a clause that waived the plaintiff's right to bring a representative

PAGA claim, and then enforcing the remainder of the arbitration agreement.  <u>See</u> <u>Viking River</u>,

142 S.Ct. at 1925.  The Court will follow the same course.  Therefore, the provision of the

Arbitration Agreement that attempts to waive Prostek's right to bring a representative PAGA

claim (i.e. a claim that is based on Labor Code violations experienced by other aggrieved

employees) will be severed and the remainder of the Arbitration Agreement will be enforced.  <u>See</u>

<u>id.</u>; <u>Little</u>, 29 Cal.4th at 1076.

 4. <u>Representative PAGA Claim</u>

 Defendants argue that the Court should continue to follow *Viking River* and dismiss

Prostek's representative PAGA claim for lack of standing.  Once the *Viking River* majority

severed the representative PAGA claim waiver, it examined California law and held that the

waiver of the individual PAGA claim resulted in the loss of the plaintiff's standing to pursue a

PAGA representative claim.  Citing *Kim v. Reins Int'l*, 9 Cal.5th 73 (2020), *Viking River*

explained:  "When an employee's own dispute is pared away from a PAGA action, the employee

is no different from a member of the general public, and PAGA does not allow such persons to

maintain suit.  As a result, [plaintiff] lacks statutory standing to maintain her [representative

claims], and the correct course is to dismiss her remaining claims." <u>Viking River</u>, 142 S.Ct. at 1925.  In her concurring opinion, Justice Sotomayor noted that the dismissal of the representative PAGA claim was based on the Supreme Court's reading of California law, and that if the understanding was wrong, "California courts, in an appropriate case, will have the last word." <u>Id.</u> (Sotomayor, J., concurring).

Since *Viking River* was issued, at least two California appellate courts have concluded that *Viking River*'s understanding of California law is incorrect.  <u>See</u> <u>Piplack</u>, 2023 Cal.App. LEXIS 166 at *14-*19; <u>Galarsa</u>, 88 Cal.App.5th at 652-55.  Additionally, the California Supreme Court is currently considering PAGA standing requirements in the context of *Viking River*.  <u>See</u> <u>Adolph v. Uber Techs., Inc.</u>, No. S274671, 2022 Cal. LEXIS 5021.  It is because of *Adolph*'s pendency that Prostek requests that the Court stay or send her representative PAGA claim to arbitration.  For their part, Defendants acknowledge the significance of the pending *Adolph* decision and do not oppose staying Prostek's representative PAGA claim.  Given the parties agreement, the pendency of *Adolph*, and the reasoning of *Piplack* and *Galarsa*, the Court finds that the appropriate course is to stay the pendency of Prostek's representative PAGA claims.  <u>Dhaliwal v. Ace Hardware Corp.</u>, 2023 U.S. Dist. LEXIS 45492, *24 (E.D. Cal. Mar. 16, 2023); <u>Valencia v. Mattress Firm, Inc.</u>, 2023 U.S. Dist. LEXIS 26863, *10 (N.D. Cal. Feb. 16, 2023).

<u>5.    Class Action Waiver</u>

The Arbitration Agreement requires that all covered claims be submitted and arbitrated on an individual basis and expressly waives Prostek's rights to initiate or participate in any class action.  <u>See</u> Doc. No. 4-2 at ¶ 6.  An arbitration agreement may contain an enforceable waiver that waives the right to initiate or participate in a class action.  <u>See</u> <u>AT&T Mobility v. Concepion</u>, 563 U.S. 333, 351 (2011); <u>Dhaliwal</u>, 2023 U.S. Dist. LEXIS 45492 at *20, *24; <u>Mills</u>, 84 Cal.App.5th at 1061; <u>Evenskaas v. California Transit, Inc.</u>, 81 Cal.App.5th 285, 290, 297-98 (2022).  Apart from arguing that the Arbitration Agreement as a whole is unconscionable, Prostek does not contend that the class action waiver is unenforceable.  Therefore, the Court will give effect to the Agreement's class action waiver and dismiss all of Prostek's class claims. <u>Concepion</u>, 563 U.S. at 351; <u>Dhaliwal</u>, 2023 U.S. Dist. LEXIS 45492 at *24; <u>Evenskaas</u>, 81 Cal.App.5th at 297-98.

1          6.      Conclusion

2          Defendants have moved to compel arbitration Prostek's claims.  As discussed above, the

3  Court has found procedural and substantive unconscionability.  The substantive unconscionability,

4  however, can be excised from the Arbitration Agreement through severance.  As a result of the

5  severance, all claims save for Prostek's representative PAGA claims (i.e. claims based on Labor

6  Code violations experienced by other aggrieved employees) are subject to arbitration.  Particularly

7  in light of the parties' agreement and the pendency of *Adolph*, Prostek's representative PAGA

8  claim will not be sent to arbitration, but will remain pending but stayed in this case until *Adolph* is

9  decided.

10

11                                  **<u>ORDER</u>**

12          Accordingly, IT IS HEREBY ORDERED that:

13  1.      Defendants' motion to compel arbitration (Doc. No. 4) is GRANTED;

14  2.      The parties SHALL SUBMIT all claims pending in this matter, except for Plaintiff's

15          representative PAGA claim, to arbitration in accordance with the Arbitration Agreement;

16  3.      Plaintiff's representative PAGA claim shall remain pending in this case until the California

17          Supreme Court issues a decision in *Adolph v. Uber Techs., Inc.*;

18  4.      Within thirty-days (30) of issuance of the decision in *Adolph v. Uber Techs., Inc.*, the

19          parties shall file a notice of decision regarding *Adolph*, a joint request to lift the stay, and

20          either a joint status report or stipulation regarding how the case should proceed in light of

21          the *Adolph* decision;[7] and

22  5.      The Clerk shall STAY this case.

23

24  IT IS SO ORDERED.

25  Dated:   __March 21, 2023__                    _____

26                                           SENIOR  DISTRICT  JUDGE

27

28  ----
[7] The failure of the parties to comply with this notice requirement will likely result in an order to show cause why sanctions and/or dismissal should not occur.